UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
VALUE WHOLESALE, INC.,

              *Plaintiff*,

                                **MEMORANDUM & ORDER**

    v.

                                18-cv-5887(KAM)(SMG)

KB INSURANCE CO. LTD.,

              *Defendant*.
--------------------------------X

      This action concerns the duty of KB Insurance Co., Ltd. d/b/a Kookmin Best Insurance Company (U.S. Branch) f/k/a Leading Insurance Group Insurance Co., Ltd. ("KBIC"), to defend its insured, Value Wholesale, Inc. ("Value"), against the underlying lawsuit captioned *Abbott Laboratories v. Adelphia Supply USA*, No. 15-cv-5826 (CBA) (LB) (E.D.N.Y.) ("the Abbott Litigation"). Pending before the court are the parties' cross-motions for summary judgment as to whether the Abbott Litigation alleges claims against Value which trigger KBIC's duty to defend under the terms of Value's insurance policy with KBIC. For the reasons set forth below, the court finds that the Value's insurance policy with KBIC covers claims alleged in the Abbott Litigation and, because no exclusions apply, KBIC must defend Value. Accordingly, Value's motion for partial summary judgment is GRANTED and KBIC's motion for summary judgment is DENIED.

**Background**

Value is a pharmaceutical wholesaler organized and existing under the laws of the State of New York. (*See* ECF No. 1, Complaint ("Compl."), ¶ 9; ECF No. 11, Answer ("Ans."), ¶ 9.) KBIC is a foreign insurance company which operates in the United States through its manager, Leading Insurance Services, Inc., a New Jersey corporation with its headquarters in Ridgefield Park, New Jersey. (ECF No. 32, Opp. 56.1 Statement.) KBIC is licensed to issue insurance policies in the State of New York. (*Id.; see also* Compl. ¶ 16; Ans. ¶ 16.)

## I.    The Insurance Policy

Value purchased a commercial insurance package from KBIC covering the period from February 4, 2014 through February 4, 2015 and renewed the package for the period from February 4, 2015 through February 4, 2016 (the "Policy"). (Compl. ¶¶ 17-19; Ans. ¶¶ 17-19; ECF No. 33-4, Commercial General Liability Coverage Form, Coverage B, Personal and Advertising Injury ("Pol.")[1].) The package included a "Commercial General Liability Coverage Part," under which KBIC agreed to defend Value against any lawsuits seeking damages resulting from covered "Personal and Advertising Injuries." (Pol. at 116.)

---

[1] For ease of reference, all citations to the Policy refer to the ECF pagination of the version of the Commercial Package Policy appended to Mr. Kraus's Declaration. Pages 94 to 109 pertain to the CGL Coverage Part, and pages 115 to 117 pertain to the relevant endorsements thereto.

The Policy provided a very specific definition of "Personal and Advertising Injury." (*Id.* at 107.) To potentially trigger coverage and, consequently, KBIC's duty to defend, the complaint naming Value as a defendant must allege an injury arising out of one of a number of "qualifying offenses." (*Id.*) As is relevant here, Value would be covered it if were sued for an injury allegedly resulting from: (1) "[Value's] use of another's advertising idea in [its] 'advertisement'"; or (2) Value "[i]nfringing upon another's copyright, trade dress or slogan in [its] 'advertisement.'" (*Id.*) Advertisement, as used in these provisions, is broadly defined as "a notice that is broadcast or published to the general public or specific market segments about [Value's] goods, products or services for the purpose of attracting customers or supporters."[2] (*Id.* at 105.)

Even if a claim would otherwise be covered, KBIC may not need to provide coverage if one or more policy exclusions apply. Two of these exclusions are at issue here. The "intentional acts exclusions," which preclude coverage against claims arising from Value's intentional conduct, are defined as follows:

---

[2] "For the purposes of this definition: a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and b. Regarding websites, only that part of a website that is about [Value's] goods, products or services for the purposes of attracting customers or supporters is considered an advertisement." (Pol. at 105.)

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

(*Id.* at 99.)  Furthermore, the "intellectual property exclusion" precludes coverage against claims arising from IP infringement:

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other [IP] rights.  Under this exclusion, such other [IP] rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

(*Id.*)

II. **The Abbott Litigation**

In November 2015, Abbott Laboratories and related companies (collectively, "Abbott") filed a lawsuit in the Eastern District of New York against Value and over one-hundred other pharmaceutical distributers and pharmacies.  *Abbott v. Adelphia Supply USA*, No. 15-cv-5826 (CBA) (LB) (E.D.N.Y.).  In March 2016, Abbott field a Second Amended Complaint in that action, which remains the operative pleading.

As background, Abbott alleges that it sells blood glucose test strips for diabetic patients under the FreeStyle® and FreeStyle Lite® trademarks. (ECF No. 33-3, Abbott's Second Amended Complaint ("Abbott Compl."), ¶ 2.) Abbott sells test strips in the domestic and international markets. (*See id.* ¶ 11.) Abbott uses distinctive packaging, referred to in the complaint as its "FreeStyle Trade Dress," to distinguish its FreeStyle products in the marketplace. (*Id.* ¶ 345.) Although Abbott's test strips are functionally identical wherever sold, Abbott uses substantially different packaging, labelling, and instructional inserts for the international test strips. (*Id.* ¶ 11.) Differences include: (i) the presence or absence of an NDC number; (ii) different indicated test sites; (iii) the presence or absence of a U.S. toll free number; (iv) different languages; (v) different symbols; (vi) different units of measurement; (vii) different temperature scales; and (viii) different warnings. (Abbott Compl. ¶¶ 353-67.) Abbott also sells the international test strips at "markedly lower list prices" due to differences between domestic and international insurance, reimbursement, and rebate practices. (*Id.* ¶ 7.)

Abbott filed its action for "trademark and trade dress infringement, fraud, racketeering, unfair competition, and other illegal and wrongful acts." (*Id.* ¶ 1.) Abbott alleges that the defendants engaged in a wrongful scheme to "import[],

advertis[e] and . . . distribut[e]" boxes of its international test strips, which are not approved for domestic sale, in the United States. (*Id.* ¶ 15.) The defendants profited from this scheme by purchasing and selling the cheaper, if functionally identical, international test strips to domestic consumers at U.S. retail prices, and then using product boxes for the approved domestic test strips for insurance reimbursement and manufacturer rebate purposes. (*Id.* ¶¶ 4-5.) The underlying complaint states that Value purchased diverted international boxes of FreeStyle test strips from several defendants and sold them to several others. (*Id.* ¶ 422.)

Abbott's complaint alleges that the scheme harmed it both financially and reputationally. Relevant here, the Abbott complaint alleges that Abbott's harm resulted, at least in part, from the defendants' advertising activities:

> Defendants' unauthorized importation, *advertisement*, and subsequent distribution causes, or is likely to cause, consumer confusion, mistake, and deception to the detriment of Abbott. . . . As a result of Abbott's extensive branding, marketing, sales, and quality control efforts . . . patients in the United States expect a certain quality, packaging, and overall image from Abbott for FreeStyle test strips. When such patients encounter the diverted international FreeStyle test strips, which bear certain of Abbott's trademarks but which are materially different from what U.S. patients expect [as described above], they are likely to be confused and, indeed, disappointed. . . . And the *advertisement* and sales of diverted international FreeStyle test strips cause great damage to Abbott and the goodwill of Abbott's *valuable trademarks*.

(*Id.* ¶ 15 (emphasis added).) Abbott further alleges that:

Using [its] trademarks and trade dress, Defendants *advertise* to consumers and the marketplace their ability and willingness to sell FreeStyle test strips. These *advertisements* are made through, inter alia, websites, emails, facsimiles, point-of-sale displays, and other media.

Defendants then dispense diverted international FreeStyle test strips, and not U.S. FreeStyle test strips. By dispensing diverted international FreeStyle test strips, Defendants are exposing each consumer to the threat of confusion and misuse posed by the material differences between U.S. and international FreeStyle test strips.

(*Id.* ¶¶ 385-6 (emphasis added); *see also id.* ¶ 5 ("At the center of this conspiracy are wholesalers (the 'Distributor Defendants') who import, *market*, and distribute large volumes of diverted international FreeStyle test strips for distribution to pharmacies . . . throughout the United States." (emphasis added)); *id.* ¶ 52 (including Value as "Distributor Defendant").)

Abbott also explained in its initial discovery disclosures that its demand for monetary damages is based on "all ill-gotten profits from Defendants' importation, purchase, marketing, *advertisement*, distribution, sale, offer for sale, and/or use in commerce in the United States of diverted international FreeStyle test strips." (ECF No. 1-7, Initial Disclosures in Abbott Litigation, at 4 (emphasis added).) Abbott, thus, identified the following "subject matter of discoverable information" for each named defendant: "[i]mportation, purchase, marketing, *advertisement*, distribution, sale, offer for sale, submitting claims for

7

rebates to be paid directly or indirectly by Abbott, and/or use in commerce in the United States of diverted international FreeStyle test strips." (*Id.* at A-2 (emphasis added).)

Based on the alleged conduct and resulting harm, Abbott asserted claims for, *inter alia*, Trademark Infringement under Section 32 of the Lanham Act; 15 U.S.C. § 1114(1); Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(i)(A); and Trademark Dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). (Abbott Compl. ¶¶ 563-71, 572-78, 582-86.) In connection with each Lanham Act claim, Abbott alleges the defendants' conduct poses a risk of harm to the value of its FreeStyle trademarks and trade dress. (*Id.*) Abbott asserts the Lanham Act claims against all defendants. (*Id.*)

### III. The Disclaimer of Coverage

On March 29, 2016, Value tendered Abbott's Second Amended Complaint to KBIC. (ECF No. 33-5, Tender.) Value asserted that the complaint alleged a qualifying advertising injury, triggering KBIC's duty to defend. (*Id.*) KBIC declined coverage, however, arguing that Abbott's complaint does not allege a causal nexus between its injuries and Value's advertising activities and that, even if it had, exclusions in the policy apply to vitiate its coverage obligations. (ECF No.

33-6, Discl.).  Value asked KBIC to reconsider, to no avail.

(ECF No. 33-7, Request for Recon.; ECF No. 33-8, Supp. Discl.)

## Procedural History

KBIC's disclaimer of its duty to defend Value spawned

two lawsuits: (1) a state court action between Continental

(Value's other insurer) and KBIC seeking a declaration that KBIC

owes Value a duty to defend under the terms of the Policy and,

accordingly, must reimburse Continental for the money

Continental has spent providing Value with a defense and must

share in Value's defense going forward, *Continental Casualty

Company v. KB Insurance Co., Ltd.*, Index No. 652103/2018, slip

op. (N.Y. Sup. Ct. May 31, 2019), *appeal filed*, Index No. 2019-

4978 (N.Y. App. Div. 2019); and (2) the instant federal action,

which seeks identical declaratory relief and, accordingly,

compensation for the unpaid defense costs Value has incurred in

the Abbott Litigation and a declaration that KBIC must defend

Value going forward in the Abbott Litigation.[3]

## I.    The State Action

At some point after KBIC declined Value's request for

coverage, Value tendered Abbott's Second Amended Complaint to

its other general commercial insurer, Continental, which

---

[3] Value also seeks a declaration that KBIC must "indemnify Value from any
covered damages."  (Compl. ¶ 1.)  Value's instant motion, however, addresses
only the duty to defend.

9

promptly began funding Value's defense.  *Id.* at 3.  Continental then challenged KBIC's refusal to pay its share of Value's defense costs by filing a declaratory relief action against KBIC in the Supreme Court of the State of New York, New York County (the "Supreme Court").  *See generally id.*  Continental sought to secure sums owed and KBIC's participation in funding Value's defense by way of a declaration that KBIC owed Value a duty to defend under the terms of the Policy.  *Id.*  Continental prevailed.  *Id.* at 9.  The Supreme Court ruled that Abbott's complaint alleged a qualifying advertising injury and that none of the exclusions cited by KBIC vitiated its duty to defend Value against the Abbott Litigation.  *Id.* at 9-11.  KBIC filed an appeal, which remains pending before the Appellate Division.

## II.  **The Federal Action**

On October 22, 2018, around the same time as Continental commenced its action against KBIC in state court, Value filed this breach of contract action against KBIC in federal court, invoking the court's diversity jurisdiction. (*See generally* Compl.)  Value sought: (1) compensation for the unpaid defense costs Value had incurred in connection with claims asserted against it by Abbott in the Abbott Litigation; and (2) a declaration that KBIC must defend Value going forward in the Abbott Litigation and that KBIC indemnify Value for any covered damages.  (*Id.* ¶¶ 2-3.)

Shortly after filing, Value and KBIC notified the court that they sought to file a partial motion and cross-motion for summary judgment, respectively, as to KBIC's duty to defend. (ECF No. 16, Pre-Motion Conference Request, at 1.) Before the motions were due, however, the Supreme Court entered its ruling in *Continental*, leading to complications in the instant action.

KBIC appealed the *Continental* decision but represented in the instant action that "[p]ending a resolution of that appeal, KBIC will participate with [Continental] in Value's defense." (ECF No. 20, Mot. to Stay.) KBIC also sought a stay of this Court's ruling on the instant motions pending the Appellate Division's decision, arguing that "[g]iven the [*Continental*] decision, and KBIC's agreement to participate in Value's defense pending the determination of the appeal, further litigation of KBIC's duty to defend would, at this juncture, be a waste of resources." (*Id.*) KBIC requested that "the Court stay the motions until the Appellate Division, First Department, issues a definitive determination regarding KBIC's duty to defend." (*Id.*) KBIC cited no legal authority for its request. (*Id.*)

Value opposed KBIC's stay. (ECF No. 21, Opp. to Mot. to Stay.) Value argued that KBIC's request was untimely and prejudicial to Value. (*Id.* ("[I]f KBIC thought the pending state action between it and another insurer should stay this

action, KBIC should not have waited until it lost the action in State Supreme Court to make its motion [to stay].  KBIC's motion, could have and should have been made at the outset of this case – before Value made the significant effort of fully briefing its motion for summary judgment in this proceeding.").) Value also argued that KBIC made no attempt to satisfy the "exceptional circumstances" standard applicable to stays based on a parallel state court action, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). (*Id.*)

KBIC's reply reiterated its earlier reasoning – with the clarification that it sought only a stay of the Court's ruling on the instant motions, not the action as a whole – again without citing authority for its request or addressing the cases cited by Value.  (ECF No. 22, Rep. in Supp. of Mot. to Stay.) KBIC's position was that "the continued briefing of the summary judgment motions, at this stage, would either result in a duplicative decision to the one KBIC has already agreed to abide by, or an inconsistent result in the event this Honorable Court reaches a different conclusion than the [Supreme Court]."  (*Id.*) Value later informed the court that KBIC refused to comply with this Court's scheduling order and file its cross-motion for summary judgment and, consequently, moved to compel KBIC to do so.  (ECF No. 28, Mot. to Compel.)

On July 3, 2019, the court heard argument on the parties' motions. (ECF Dkt. Entry, July 3, 2019.) At the conference, KBIC stated that given the *Continental* decision, "[it] is KBIC's position that [it] owe[s] [Value] a duty to defend" and that it had "lost on the issue." (Transcript of July 3, 2019 Hearing ("Tr."), at 02:24-03:16.) KBIC further indicated that it would need to discuss taking over Value's defense with Continental, and would need to reimburse Continental for paying KBIC's portion of Value's defense costs. (*Id.* at 04:13-05:10.) KBIC sought to moot the instant motions based its representations to the Court. (*Id.* at 03:17-04:04.)

Value objected, noting that "[t]he issue of the prospective participation of KBIC in the defense is only half of this case." (*Id.* at 13:05-20.) Value noted that "over $400,000 of [its] prior expenses" had yet to be paid. (*Id.* at 14:09-10.) Apparently concerned with the need for certainty that KBIC would both provide sums owed *and* participate in Value's defense going forward, Value insisted that KBIC concede the motions. (*Id.* at 06:22-07:16.) KBIC declined to do so. (*Id.* at 09:06-24.)

After affording both parties an opportunity to be heard, the court (1) noted that KBIC had represented that it recognized its duty to defend Value, and that it expected KBIC to abide by that representation; (2) denied KBIC's motion to stay; and (3) directed KBIC to inform the court whether it would

13

proceed with litigation or mediation.  (*See* ECF No. 48, Order.)
KBIC informed the court it would proceed with the litigation and
file its motion papers and further represented that it would
proceed to mediation upon receipt of Value's bills.

After further discussion, summarized more fully in an
order dated September 18, 2019 (*id.*), the parties proceeded to
mediation.  The mediation was not successful, and the parties'
fully briefed motions are ready for decision.[4]  (ECF No. 25,
Value's Mem. in Supp. of Mot. for Partial Summ. J. ("Value
Mot."); ECF No. 34, KBIC Mem. in Supp. of Cross-Mot. for Summ.
J. ("KBIC Mot."); ECF No. 35, Value's Reply Mem.; ECF No. 38,
KBIC's Reply Mem.)

## Legal Standard

A party is entitled to summary judgment when there is
no "genuine issue of material fact" and the undisputed facts
warrant judgment for the moving party as a matter of law.  Fed.
R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242
(1986).  In reviewing a motion for summary judgment, the court

---

[4] After their unsuccessful attempt at mediation, the court asked the parties
whether their cross-motions for summary judgment were moot based on KBIC's
acknowledgment of a duty to defend in the wake of *Continental*. (ECF No. 53,
Joint Status Letter.)  The parties responded in the negative. (*Id.*)  Value
stated that nothing short of KBIC conceding the motions would suffice, and
raised the additional argument that KBIC is collaterally estopped from
arguing that it does not have a duty to defend.  (*Id.* at 1-2.)  KBIC stated
it would not concede the motion, pending *de novo* review of the *Continental*
decision by the First Department, and renewed its request of a stay of the
instant motions.  (*Id.* at 2-3.)

"must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Summary judgment is particularly appropriate in resolving insurance coverage disputes because the interpretation of an insurance policy presents a question of law." *670 Apartments Corp. v. Agric. Ins. Co.*, No. 96-cv-1464 (PKL), 1996 WL 559942, at *2 (S.D.N.Y. Oct. 2, 1996).

## Discussion

Pending before the court are (1) KBIC's renewed motion to stay and (2) the parties' cross-motions for summary judgment as to KBIC's duty to defend. Value argues that KBIC owes it a duty to defend because the Abbott Litigation alleges a covered advertising injury. KBIC, on the other hand, asserts that Abbott's complaint fails to allege a sufficient causal nexus between Value's advertising activities and its alleged harm. KBIC further argues that, even if Abbott had alleged a covered advertising injury, the intentional acts exclusions would preclude coverage because Value could not have unwittingly participated in the alleged scheme. For the reasons set forth below, KBIC's motion to stay is DENIED, KBIC's motion for

summary judgment is DENIED, and Value's motion for partial

summary judgment is GRANTED.

## I.    Motion to Stay

Ignoring the court's July 3, 2019 ruling denying a

stay, KBIC renews its argument that the court should defer its

ruling on the parties' cross-motions for summary judgment on the

grounds that the Appellate Division could render a judgment

inconsistent with this Court's.  KBIC presents no new

developments justifying what is, in effect, a (very late) motion

to reconsider the court's prior ruling denying the stay.

KBIC has provided no legal authority – then or now –

to support its request that the court defer its ruling on the

instant motions.  Absent citation to authority, KBIC appears to

be seeking a stay based on the Court's inherent power.  *See*

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96

(2d Cir. 2012) ("'[T]he power to stay proceedings is incidental

to the power inherent in every court to control the disposition

of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants.'" (quoting *Landis v. N.*

*Am. Co.*, 299 U.S. 248, 254 (1936))).  Determining whether to

grant a stay "'calls for the exercise of judgment, which must

weigh competing interests and maintain an even balance.'"  *Id.*

(quoting *Landis*, 299 U.S. at 254-55).  Although this standard is

more typically applied in the context of granting a stay of an

action, as it falls within the Court's inherent power, the Court sees no reason why it should not apply here to KBIC's request to stay the pending motions.

In this case, the balance did not – and does not – favor deferring a ruling on the instant motions.  KBIC's motion for a stay is untimely.  If KBIC found a stay necessary to avoid inconsistent rulings, it should have requested a stay before the parties began briefing the instant motions.  KBIC's basis for a stay – the risk of inconsistent rulings – is also minimal because, as detailed below, the court agrees with the Supreme Court's *Continental* decision.  Moreover, although KBIC argues that there is no prejudice because it has agreed to abide by the *Continental* decision, KBIC's representations left some ambiguity as to the temporal scope of its concession (i.e., whether it applied to only future payments, or also sums owed), and Value has not received any payments from KBIC, demonstrating that KBIC's representation may well be insufficient to remove any potential prejudice resulting to Value from a stay.

KBIC does not appear to invoke *Colorado River* abstention as a basis for a stay of this action.  Had KBIC done so, the court would find that it has not shown the existence of "exceptional circumstances" which would vitiate the Court's "virtually unflagging" obligation to exercise jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424

U.S. 800, 813 (1976).  *Colorado River* permits a stay when (1)
state and federal actions are "parallel" and (2) evaluation of
the following six-factor test weighs in favor of abstention:

> (1) whether the controversy involves a res over which one
> of the courts has assumed jurisdiction; (2) whether the
> federal forum is less inconvenient than the other for the
> parties; (3) whether staying or dismissing the federal
> action will avoid piecemeal litigation; (4) the order in
> which the actions were filed, and whether proceedings have
> advanced more in one forum than in the other; (5) whether
> federal law provides the rule of decision; and (6) whether
> the state procedures are adequate to protect the
> plaintiff's federal rights.

*Niagara Mohawk Power Corp. v. Hudson River-Black River
Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012).  The balance
is "'heavily weighted in favor of the exercise of
jurisdiction,'" *id.* (quoting *Moses H. Cone Memorial Hospital v.
Mercury Constr. Corp.*, 460 U.S. 1 (1983)), and a "neutral"
factor weighs in favor of retaining jurisdiction, not
relinquishing it, *id.* (citing *Woodford v. Cmty. Action Agency of
Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)).

Even assuming, but not deciding, that the actions
qualify as parallel, KBIC has not established that the *Colorado
River* factors favor abstention.  *First*, there is no property or
*res* at issue.  *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d
Cir. 1989) ("[T]he absence of jurisdiction over a *res* . . .
point[s] toward exercise of federal jurisdiction.").  *Second*,
the state and federal fora are "equally convenient."  *Niagara*,

673 F.3d at 101.  *Third*, piecemeal litigation cannot be entirely avoided, as Value seeks monetary damages in this action, a matter which will need to be decided separately from the declaratory relief and the amount of monetary damages owed to Continental.  To the extent KBIC raises concerns as to inconsistent judgments, this Court finds those risks minimal, as the court believes that *Continental* was correctly resolved by the state court.  *Fourth*, the actions were filed at roughly the same time and, although one has progressed further, KBIC delayed any request for a stay until the briefing of summary judgment in this action had been substantially completed.  *Fifth*, state law provides the rule of decision, but the absence of federal issues does not strongly advise dismissal as the state law issues are not "novel or particularly complex."  *See, e.g.*, *id.* at 102-03.  *Finally*, and weighing heavily in favor exercising jurisdiction, Value is not a party to the state action and cannot receive any specific relief from that decision.  Moreover, Value represents that it has not received payments from KBIC since the *Continental* decision, demonstrating that the decision KBIC purports to invoke as the basis of the motion to stay has not protected Value's rights.

## II.  Motions for Summary Judgment

The court now turns to the merits of the parties' cross-motions for summary judgment.

a. Collateral Estoppel

Value argues the Supreme Court's decision in *Continental* collaterally estops KBIC from arguing in the instant case that it does not have a duty to defend Value against the Abbott Litigation. "To determine the [preclusive] effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Consequently, New York law applies to determine the preclusive effect of the *Continental* decision. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply . . . New York law in determining the preclusive effect of a New York State court judgment.").

Under New York law, collateral estoppel, or issue preclusion, does *not* apply to pure questions of law. *McGrath v. Gold*, 36 N.Y.2d 406, 411 (1975). As the scope of a duty to defend is a question of law, *see, e.g.*, *Wausau Underwriters Ins. Co. v. QBE Ins. Corp.*, 496 F. Supp. 2d 357, 360 (S.D.N.Y. 2007), *opinion clarified*, 533 F. Supp. 2d 389 (S.D.N.Y. 2008) ("Federal and state courts in New York have recognized that determination of an insurer's duty to defend presents a question of law appropriate for resolution by summary judgment."), collateral

estoppel would not appear to preclude KBIC from challenging its duty to defend value in this action.[5]

Whether collateral estoppel applies, however, does not impact the resolution of the instant motions. KBIC has represented in this litigation that it owes Value a duty to defend based on the *Continental* decision and will participate in Value's defense, and the court expects KBIC to abide by its representation. Moreover, the Court finds that, even without such representation, KBIC would have a duty to defend Value.

b. <u>Duty to Defend</u>

Under New York law,[6] an insurer's duty to defend is "exceedingly broad" and "far more expansive than the duty to

---

[5] To the extent that KBIC's duty to defend Value could be construed as a mixed question of law and fact to which collateral estoppel applies, as it involves interpreting the insurance contract under a particular set of factual allegations, *see, e.g.*, *Simon v. Capital Merch. Servs., LLC*, No. 19 CIV. 904 (KPF), 2020 WL 615091, at *9 (S.D.N.Y. Feb. 10, 2020) ("[W]here pure questions of law — *unmixed with any particular set of facts* — are presented to a court . . . ." (emphasis added)), the elements of collateral estoppel would be met because: (1) the issue in *Continental* is identical to the issue here (i.e., whether the Abbott Litigation triggered KBIC's duty to defend based on an advertising injury); (2) the issue in *Continental* was actually litigated and decided (the parties briefed and argued the question of KBIC's duty to defend, and Judge Crane issued a detailed decision on the merits); (3) KBIC had a full and fair opportunity to litigate in the State Court action (and, in fact, raised identical arguments to those raised in its instant motion papers); and (4) the question raised was necessary to the *Continental* decision (it was the subject of the declaratory relief sought). *See Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015); *Resnik v. Coulson*, No. 17-CV-676 (PKC) (SMG), 2019 WL 1434051, at *3 (E.D.N.Y. Mar. 30, 2019) (citing *Conason* for elements of collateral estoppel under New York law).

[6] Neither party disputes that New York law applies, as Value is located in New York and the subject insurance policies were purchased by the insured in New York. *See Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S.2d 30, 33 (2006), *aff'd* 9 N.Y.3d 928 (2007); Value Mot.; KBIC Mot.)

indemnify its insured." *High Point Design, LLC v. LM Insurance Corporation*, 911 F.3d 89, 94-95 (2d Cir. 2018) (citing *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 648 (1993)). The insurer must defend its insured "whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." *Id.* (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984)). "'[I]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action.'" *Id.* (quoting *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997)). *Finally*, "insurers are to look beyond the four corners of the complaint in deciding whether there is coverage." *Id.* (citing *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991)).

In light of the foregoing principles, an "insurer may deny its insured a defense 'only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy.'" *Id.* at 95 (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985)). "'If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend.'"

*Id.* (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002)).

Whether KBIC has a duty to defend Value turns principally on whether Abbott's complaint alleges a qualifying advertising injury. To trigger the duty to defend based on an advertising injury, the underlying complaint must allege that the injury has a causal connection to the insured's advertising activities and arises from one of the enumerated offenses. *See Bridge Metal Indus., LLC v. Travelers Indem. Co.*, 559 F. App'x 15, 19 (2d Cir. 2014) (quoting *A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 545 N.E.2d 1206, 1208 (N.Y. 1989)).

Cast in the above terms, the question the court must answer is whether, "liberally construed," Abbott's claim that Value and its co-defendants "advertised" allegedly infringing goods "is within the embrace of the policy." *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006). KBIC argues this standard is not met because: (1) Abbott's complaint alleges no causal connection between Value's advertising activities and Abbott's harm; (2) Abbott's claims do not fall within the qualifying advertising offenses; and (3) in any event, exclusions barred coverage. KBIC's arguments lack merit.

*First*, Abbott's complaint alleges a causal connection between Abbott's alleged injury and Value's advertising activities. "'[T]here is much confusion in the caselaw

concerning when an 'advertising injury' is 'caused' by advertising within the meaning of standard business insurance policies.'" *High Point*, 911 F.3d at 95 (quoting *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 247 (2d Cir. 2002)). "'[C]ourts are to compare the allegations of the complaint to the terms of the policy.'" *Id.* (quoting *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006)). "'If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be.'" *Id.* (quoting *Colon v. Aetna Life & Cas. Inc. Co.*, 66 N.Y.2d 6, 8-9 (1985)).

KBIC argues there is no connection between Value's advertising activities and Abbott's alleged injuries, stating that "[t]here are no claims that Value's advertisements, by themselves, infringed upon Abbott's intellectual property or caused Abbott's damages," and that Abbott's harm arises from the importation and distribution, not advertising, of the diverted test strips. (ECF No. 34, KBIC's Cross-Mot. for Summ. J., at 1.) KBIC's arguments rely on too narrow a definition of causation. The causation inquiry asks not whether "the injury could have taken place without the advertising," but whether the advertising contributed materially to the injury. *R.C. Bigelow*, 287 F.3d at 248.

Contrary to KBIC's assertions, this is not a case where Abbott's harm was alleged to have been caused solely by the importation and distribution of the infringing goods. *E.g.*, *Bridge Metal*, 559 F. App'x 15, 19 ("A complaint does not claim an advertising injury if it alleges only the manufacture, importation, and sale of infringing goods without claiming harm arising from advertising, and where it seeks relief 'without reference to preventing any type of false, misleading or injurious advertising.'" (quoting *A. Meyers & Sons*, 545 N.E.2d at 1208-09)). Rather, Abbott explicitly alleges that the defendants' advertising activities contributed to the alleged harm, if in conjunction with other activities. *See, e.g.*, *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 751 F. Supp. 2d 444, 452 (E.D.N.Y. 2010), *aff'd*, 720 F.3d 71 (2d Cir. 2013) (concluding that the liberally read complaint alleged injury arising from an offense in the course of advertising where it alleged that the insured "manufactured and advertised counterfeit products, causing confusion and mistake in the minds of the purchasing public"); *Century 21*, 442 F.3d at 83–84 (finding complaint's use of the word "marketed" sufficient to trigger duty to defend).

Abbott alleges that the defendants' "unauthorized importation, advertisement *and* subsequent distribution cause, or is likely to cause, consumer confusion . . . to [its]

detriment." (Abbott Compl. ¶ 15) Abbott further alleges that

"the advertisement *and* sales of diverted international FreeStyle

test strips cause great damage to Abbott and the goodwill of

Abbott's valuable trademarks." (*Id.*) Abbott also alleges that

"[u]sing [its] trademarks *and trade dress*, Defendants advertise

to consumers and the marketplace their ability and willingness

to sell FreeStyle test strips," which contributed to Abbott's

injuries. (*Id.* ¶¶ 385-86.) In fact, Abbott predicated its

demand for damages in part on advertising, seeking damages for

"all ill-gotten profits from Defendants' importation, purchase,

marketing, advertisement, distribution, sale, offer for sale,

and/or use in commerce in the United States of diverted

international FreeStyle test strips." (Init. Disc. at 4.)

Value correctly points out that were Abbott concerned

only with wrongful sales, it could have easily omitted any

reference to advertising in its complaint and initial

disclosures. Yet, Abbott explicitly alleged injuries caused by,

among other things, the defendants' advertising[7] of diverted

strips using the infringing trademarks and trade dress.[8] *Hugo*

---

[7] Abbott's complaint also alleges that the defendants "marketed" the
infringing products, which also constitutes grounds for invoking coverage.
*See Century 21*, 442 F.3d at 83 (holding that the term "marketing" can be
"construed to include activities apart from selling and distribution that are
'within the embrace' of 'advertising' as that term is used in the policy" for
purposes of advertising injury (quoting *Colon v. Aetna Life & Cas. Ins. Co.*,
66 N.Y.2d 6 (1985))).

[8] Indeed, "[o]ne court has concluded that a claim for trade dress infringement
necessarily 'includes as an element of proof some communication between

*Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) ("'[S]o long as the claims [asserted against the insured] may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend.'" (quoting *Seaboard*, 64 N.Y.2d at 310)); *see also Continental*, slip op. at 8-9; *see also W. Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc.*, 385 Wis. 2d 580, 596-99 (2019) (citing 2d Cir. causation standard and finding it met). Abbott's complaint, thus, alleges a causal nexus between Value's advertising and Abbott's alleged harm.

*Second*, Abbott's complaint alleges injuries which arguably arose from qualifying advertising offenses. Abbott alleges that, "[u]sing Abbott's trademarks and trade dress, the defendants advertise to consumers and the marketplace their ability and willingness to sell FreeStyle test strips. These advertisements are made through, inter alia, websites, emails, facsimiles, point-of-sale displays, and other media." (Abbott Compl. ¶ 385.) Fairly read, the complaint alleges the

---

seller and consumer,' or, in other words, some element of an advertisement." *Bridge Metal*, 812 F. Supp. 2d at 542 (quoting *Energex Sys. Corp. v. Fireman's Fund Ins. Co.*, No. 96-CV-5993, 1997 WL 358007, at *4 (S.D.N.Y. June 25, 1997); 3 New Appleman Law of Liability Insurance § 18.02(3)(c)(i) (Matthew Bender, Rev. Ed. 2011) (noting that a majority of courts have found coverage for trade dress infringement under advertising injury provisions because "infringing . . . trade dress will necessarily occur in the course of the policyholder's advertising activities")).

defendants "advertised the unapproved products and sold them to the public as if they were the approved test strips." *Continental*, slip. op. at 8. The complaint further ties Value's advertisements to its injury, stating that: Value's "unauthorized importation, *advertisement*, *and* subsequent distribution causes, or is likely to cause, consumer confusion, mistake, and deception to the detriment of Abbott," and "the advertisement *and* sales of diverted international FreeStyle test strips *cause great damage to Abbott and the goodwill of Abbott's valuable trademarks.*" (Abbott Compl. ¶ 15 (emphasis added).)

The complaint plainly alleges that Value engaged in the qualifying offense of "[i]nfringing upon [Abbott's] . . . trade dress . . . in [its] 'advertisement.'" The complaint also could arguably be read as alleging that Value "use[d] [Abbott's] advertising idea in [its] 'advertisement'"; "misappropriation of advertising ideas or style of doing business encompasses the wrongful taking of the manner by which another advertises its goods or services, including the misuse of another's trademark," as Abbott alleges here. *Allou Health & Beauty Care, Inc. v. Aetna Cas. & Sur. Co.*, 269 A.D.2d 478, 480 (N.Y. App. Div. 2000); *see also R.C. Bigelow*, 287 F.3d at 247 (finding that use of allegedly infringing trade dress in advertisements qualified under enumerated offense of "[c]opying a person's or organization's advertising ideas or advertising style"). Based

on the record presented, Abbott's allegations against Value are sufficient to satisfy the qualifying offense element as its complaint alleges harm resulting from Value's engagement in qualifying advertising offenses. *Continental*, slip. Op. at 8.

*Finally*, the intentional acts exclusions do not apply to vitiate KBIC's duty to defend. "'[E]xclusions are subject to strict construction and must be read narrowly.'" *CGS Indus. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 77 (2d Cir. 2013) (quoting *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). "To be relieved of its duty to defend on the basis of a policy exclusion, the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Id.* The insurer must "demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 545 (S.D.N.Y. 2011).

Abbott alleges several claims relating to Value's allegedly infringing conduct with respect to Abbott's trade dress which do not require proof of Value's intent, including Unfair Competition, 15 U.S.C. § 1125(a)(i)(A) (Lanham Act §

43(a)) and Trademark Dilution, 15 U.S.C. § 1125(c) (Lanham Act § 43(c)). (Abbott Compl. ¶¶ 563-71, 572-78, 582-86.) Although Abbott alleged willful misconduct, courts have found that allegations of Lanham Act violations preclude application of an intentional acts exclusion because one can be found strictly liable under the Lanham Act, with no finding made as to one's intent. *See, e.g.*, *CGS Indus.*, 720 F.3d at 83 ("Despite the boilerplate allegation of willful misconduct, Five Four's Lanham Act section 43(a) claim did not require it to prove that CGS intended to infringe on its trademark, as such a claim does 'not require proof of intent to deceive.'" (quoting *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189 (2d Cir. 1980))); *Bridge Metal*, 812 F. Supp. 2d at 545 (collecting cases). "Our inquiry ends there: as at least one of the claims in the [Abbott Litigation] did not require intent, [KBIC] was required to defend the entire action." *CGS Indus.*, 720 F.3d at 83.

KBIC, nevertheless, argues that the exclusions must apply because the complaint does not allege that Value's conduct was unintentional or accidental, but rather than Value acted intentionally and knowingly. This argument, although facially appealing, misses the mark – the critical question is whether the allegations in Abbott's complaint foreclose the possibility that Value could be liable to Abbott without the court finding that Value acted intentionally in inflicting the alleged

advertising injury. *See, e.g.*, *Bridge Metal*, 812 F. Supp. 2d at 545 ("The allegations in the complaint do not foreclose the possibility that Plaintiffs could have been liable to National without the court finding that Plaintiffs knew that their conduct would violate National's rights and inflict the advertising injury at issue. Thus, Defendant has failed to 'demonstrate that the allegations of the complaint can be interpreted only to exclude coverage' and it had a duty to defend Plaintiffs in the underlying lawsuits.").

Similarly, the cases cited by KBIC where the insurer lacked a duty to defend because the insured had not shown or could not show, given the nature of the offense, that its infringing conduct was unintentional, are distinguishable. In *Atlantic Mutual Insurance Co. v. Terk Technologies Corp.*, 763 N.Y.S.2d 56 (App. Div. 2003), for instance, the insured:

> [A]pproached a local manufacturer to produce a cheaper, low-quality knock-off of the [original product]; marketed the counterfeit product in packaging indicating it was a genuine [original] creation manufactured in Denmark, both blatantly false; and then fraudulently misled [the original product creator] when he inquired as to poor sales, indicating that demand was low, whereas the counterfeit product was enjoying vigorous sales.

*Id.* at 64. The court found it "impossible to envision how [the insured] could have [engaged in this conduct] unknowingly, and unintentionally." *Id.* And in *A.J. Sheepskin & Leather Co. v. Colonia Ins. Co.*, 709 N.Y.S.2d 82 (App. Div. 2000), the court

had already made a finding that the insured was "a 'serial infringer' that had 'deliberately sought to confuse the public' by selling goods nearly identical to [another's]." *Id.* at 83.

Here, by contrast, the allegations do not foreclose the possibility that Abbott could succeed on its trade dress infringement claims against Value without a finding that Value acted intentionally. *See, e.g.*, *Continental*, slip op. at 9-11; *W. Bend*, 385 Wis. 2d at 600-06. Indeed, Judge Amon granted Abbott's motion for summary judgment against Value for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C § 1114(1), on strict liability but *denied* Abbott's motion as to its claim that Value willfully infringed Abbott's trademarks because "a reasonable jury could conclude that [Value] did not willfully infringe." *Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2019 WL 5696148, at *9, *35 (E.D.N.Y. Sept. 30, 2019); *see also A.J. Sheepskin*, 709 N.Y.S.2d at 83 (considering developments in underlying litigation in duty to defend analysis). The court refers the parties to Judge Amon's very thorough and detailed opinion for an overview of the many factors supporting the conclusion that a reasonable jury could conclude that Value did not willfully infringe. KBIC has not

met its heavy burden of showing that any exclusion applies to vitiate its duty to defend.[9]

## Conclusion

In light of the foregoing, the court hereby GRANTS Value's motion for partial summary judgment as to KBIC's duty to defend. KBIC's motion for summary judgment is DENIED. The court is troubled by Value's representations in the January 6, 2020 joint status letter that KBIC has not paid any of Value's bills, despite KBIC representing that it would defend Value in conference. (*See* ECF Dkt. Order, July 3, 2019; ECF No. 53, Status Letter.) The court ORDERS that KBIC SHOW CAUSE by April 14, 2020 why it has failed to honor its representations to Value and the court that it would defend Value on a going forward basis. As previously scheduled, the parties are to submit their pre-inquest submissions by April 24, 2020 and appear before the Court for an inquest on damages on June 1, 2020.

**SO ORDERED.**

Dated:      March 31, 2020
            Brooklyn, New York

                                    _____
                                    /s/
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge

---

[9] In its earlier dealings with Value, KBIC also asserted that the IP exclusion should apply. KBIC has not, however, raised that argument in the instant motions and the court need not address it, particularly given that the exclusion expressly does not apply to "infringement, in [Value's] 'advertisement,' of copyright, trade dress or slogan," as is alleged here.