UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
VALUE WHOLESALE, INC.,

              *Plaintiff*,

      v.

KB INSURANCE CO. LTD.,

              *Defendant*.
--------------------------------X

**MEMORANDUM & ORDER**

18-cv-5887(KAM)(SMG)

**KIYO A. MATSUMOTO, United States District Judge:**

      This action concerned the duty of defendant KB
Insurance Co., Ltd. ("KBIC") to defend its insured, Value
Wholesale, Inc. ("Value"), in a trademark lawsuit before Judge
Carol Bagley Amon: *Abbott Laboratories v. Adelphia Supply USA*,
No. 15-cv-5826 (E.D.N.Y.) (the "Abbott Litigation").  This court
previously found, on summary judgment, that KBIC breached its
duty to defend Value in the Abbott Litigation.  Now pending
before the court are the parties' submissions regarding the
proper amount of damages to be awarded to Value.

      For the reasons set forth below, the court finds that
KBIC owes Value $347,800.89 in damages, plus prejudgment
interest at a rate of nine percent per annum since April 4,
2018, and postjudgment interest as prescribed by 28 U.S.C. §
1961.

**Background**

The relevant factual background giving rise to this action was set forth in the court's March 31, 2020 Memorandum and Order granting Value's motion for partial summary judgment with respect to KBIC's liability for its breach of its duty to defend.  (*See generally* ECF No. 57, Memorandum and Order, published as *Value Wholesale, Inc. v. KB Ins. Co.*, 450 F. Supp. 3d 292 (E.D.N.Y. 2020).)  The court summarizes that background only briefly here.

Value is a pharmaceutical wholesaler.  (*See* ECF No. 1, Complaint ("Compl."), ¶ 9; ECF No. 11, Answer ("Ans."), ¶ 9.) KBIC is a foreign insurance company that operates in the United States through its manager, Leading Insurance Services, Inc., a New Jersey corporation with its headquarters in Ridgefield Park, New Jersey.  (ECF No. 32, KBIC Objections to Rule 56.1 Statement, ¶¶ 1-2.)  KBIC is licensed to issue insurance policies in the State of New York.  (*Id.; see also* Compl. ¶ 16; Ans. ¶ 16.)

Value purchased a commercial insurance package from KBIC covering the period from February 4, 2014 through February 4, 2015, and renewed the package for the period from February 4, 2015 through February 4, 2016 (the "Policy").  (Compl. ¶¶ 17-19; Ans. ¶¶ 17-19; *see* ECF No. 33, Declaration of Matthew Kraus ("Kraus Decl."), Ex. D, Commercial General Liability Coverage

Form, Coverage B, Personal and Advertising Injury ("Pol.")[1].)
The package included a "Commercial General Liability Coverage
Part," under which KBIC agreed to defend Value against any
lawsuits seeking damages resulting from covered "Personal and
Advertising Injuries." (Pol. at 116.)

        To trigger coverage and, consequently, KBIC's duty to
defend, a complaint naming Value as a defendant had to allege an
injury arising out of one of a number of "qualifying offenses."
(*Id.*) Value would be covered it if were sued for an injury
allegedly resulting from: (1) "[Value's] use of another's
advertising idea in [its] 'advertisement'"; or (2) Value
"[i]nfringing upon another's copyright, trade dress or slogan in
[its] 'advertisement.'" (*Id.*) Advertisement, as used in these
provisions, was broadly defined as "a notice that is broadcast
or published to the general public or specific market segments
about [Value's] goods, products or services for the purpose of
attracting customers or supporters." (*Id.* at 105.) Even if a
claim would otherwise be covered, however, KBIC may not have
needed to provide coverage if one or more policy exclusions
applied. (*See id.* at 99.) There was, for example, an
"intentional acts exclusions," which precluded coverage against

---

[1] For ease of reference, citations to the Policy refer to the ECF pagination
of the version filed on the docket with Mr. Kraus's declaration earlier in
this action.

claims arising from Value's intentional conduct.  (*Id.*)
Furthermore, the "intellectual property exclusion" precluded
coverage against claims arising from alleged intellectual
property infringement.  (*Id.*)

In November 2015, Abbott Laboratories and related
companies (collectively, "Abbott") filed a lawsuit in the
Eastern District of New York against Value and over one-hundred
other pharmaceutical distributers and pharmacies.  *Abbott v.
Adelphia Supply USA*, No. 15-cv-5826 (E.D.N.Y.).  Value retained
the law firm Stern & Schurin LLP ("Stern & Schurin") to defend
it in the Abbott Litigation.  One of Value's co-defendants in
the Abbott Litigation, MedPlus, Inc. ("MedPlus") retained the
same law firm for its defense.

Abbott alleged that the defendants engaged in a
wrongful scheme to "import[], advertise[] and . . .
distribut[e]" boxes of international blood glucose test strips
produced by Abbott, which were not approved for domestic sale in
the United States.  (ECF No. 73, Declaration of Steven Stern
("Stern Decl."), Ex. B, Abbott's Second Amended Complaint
("Abbott Compl."), ¶ 15.)  Abbott's complaint alleged that
Abbott's harm resulted, at least in part, from the defendants'
advertising activities:

> Defendants' unauthorized importation, *advertisement*,
> and subsequent distribution causes, or is likely to
> cause, consumer confusion, mistake, and deception to the

> detriment of Abbott. . . .  As a result of Abbott's
> extensive branding, marketing, sales, and quality
> control efforts . . . patients in the United States
> expect a certain quality, packaging, and overall image
> from Abbott for FreeStyle test strips.  When such
> patients encounter the diverted international FreeStyle
> test strips, which bear certain of Abbott's trademarks
> but which are materially different from what U.S.
> patients expect [as described above], they are likely to
> be confused and, indeed, disappointed. . . .  And the
> *advertisement* and sales of diverted international
> FreeStyle test strips cause great damage to Abbott and
> the goodwill of Abbott's *valuable trademarks*.

(*Id.* ¶ 15 (emphasis added).)  Abbott also explained in its

initial discovery disclosures that its demand for monetary

damages was based on "all ill-gotten profits from Defendants'

importation, purchase, marketing, *advertisement*, distribution,

sale, offer for sale, and/or use in commerce in the United

States of diverted international FreeStyle test strips."

(Compl., Ex. F, Initial Disclosures in Abbott Litigation, at 4

(emphasis added).)  Based on the alleged conduct and resulting

harm, Abbott asserted claims for, *inter alia*, trademark

infringement under Section 32 of the Lanham Act, 15 U.S.C. §

1114(1); unfair competition under Section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(a)(i)(A); and trademark dilution under

Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  (Abbott

Compl. ¶¶ 563-71, 572-78, 582-86.)

On March 29, 2016, Value tendered Abbott's Second

Amended Complaint to KBIC.  (Kraus Decl., Ex. E, Tender.)  Value

asserted that the complaint alleged a qualifying advertising

injury, triggering KBIC's duty to defend.  (*Id.*)  KBIC declined coverage, arguing that Abbott's complaint did not allege a causal nexus between its injuries and Value's advertising activities and that, even if it had, exclusions in the policy applied.  (Kraus Decl., Ex. F, Disclaimer).  Value asked KBIC to reconsider, to no avail.  (Kraus Decl. Ex. G, Request for Reconsideration, and Ex. H, Supplemental Disclaimer.)

## Procedural History

KBIC's disclaimer of its duty to defend Value spawned two lawsuits: (1) a state court action between Continental Casualty Company ("Continental") (Value's other insurer) and KBIC, in which Continental sought a declaration that KBIC owed Value a duty to defend under the terms of the Policy and, accordingly, had to reimburse Continental for the money Continental had spent providing Value with a defense, *see Continental Casualty Company v. KB Insurance Co., Ltd.*, Index No. 652103/2018, slip op. (N.Y. Sup. Ct. May 31, 2019), *appeal filed*, Index No. 2019-4978 (N.Y. App. Div. 2019); and (2) the instant federal action initiated by Value against KBIC, which sought identical declaratory relief and, accordingly, compensation for the unpaid defense costs Value incurred in the Abbott Litigation, and a declaration that KBIC must defend Value going forward in the Abbott Litigation.

In the instant case, following the state court's
decision in the *Continental* action that KBIC had a duty to
defend Value, the parties moved for summary judgment in this
action.  (*See* ECF Nos. 24-27, 31-39.)  On March 31, 2020, this
court granted Value's motion for partial summary judgment as to
liability on KBIC's duty to defend, and denied KBIC's motion for
summary judgment.  The court ruled that (1) the state court
decision in *Continental* did not prevent this court from
determining whether KBIC owed damages to Value, 450 F. Supp. 3d
at 302-03; and (2) KBIC breached its duty to defend Value, *id.*
at 303-07.  The court therefore granted Value's motion, and
directed the parties to appear for an inquest on damages.  *Id.*
at 308.  In a letter to the court dated April 14, 2020, KBIC
represented "that it will defend Value on a going forward
basis."  (ECF No. 58, KBIC Letter, at 1.)

After further litigation over the expert discovery
relevant to the inquest on damages, the result of which allowed
the parties to submit the numerous filings, replies, and expert
declarations that are now before the court, the parties
submitted their papers setting forth their respective positions
on damages.  (ECF No. 72, Value's Opening Memorandum in Support
of Claim for Monetary Damages ("Value Mem."); ECF No. 74, KBIC's
Opening Memorandum in Opposition ("KBIC Mem."); ECF No. 76,
Value's Memorandum in Opposition to KBIC's Opening Memorandum

("Value Mem. in Opp."); ECF No. 79, KBIC's Memorandum in
Opposition to Value's Memorandum; ECF No. 80, Value's Reply
Memorandum in Support of Claim for Monetary Damages ("Value
Reply Mem."); ECF No. 82, KBIC's Reply Memorandum in Further
Support of its Opening Memorandum ("KBIC Reply Mem."); ECF No.
85, Value's Sur-Reply Memorandum in Further Opposition to KBIC's
Memorandum ("Value Sur-Reply").[2]  The parties have agreed to
rely solely on their numerous submissions, and have stipulated
to the admissibility of the declarations and exhibits filed in
support.  (*See* ECF No. 88, Stipulation.)

### Legal Standard

"Where an insurer breaches the duty to defend, it must
pay damages in the form of attorneys' fees and litigation
expenses reasonably incurred by the insured in defending the
underlying action." *United Parcel Serv. v. Lexington Ins. Grp.*,
983 F. Supp. 2d 258, 267–68 (S.D.N.Y. 2013).  "Generally, the
insurer will be liable for defense costs from the time that the
duty was triggered (*i.e.*, when a complaint alleging facts
arguably entitling the insured to coverage is made) until it is
determined that the actual facts place the case outside the
coverage provided." *Id.* at 268 (quoting M*aryland Cas. Co. v.*

---

[2] In addition to their briefs, the parties also rely on several expert reports
from purported experts in the field of attorneys' fees and legal billing
practices.  Value relies on expert submissions from Steven A. Tasher (*see* ECF
Nos. 78, 86), and KBIC relies on a submission from Elise S. Frejka (*see* ECF
No. 84).

8

*W.R. Grace & Co.*, No. 88-cv-4337, 1994 WL 167962, at *5

(S.D.N.Y. Apr. 29, 1994)).

## Discussion

Value argues that it is entitled to a total of

$833,460.15 in damages, which is (1) the amount in attorneys'

fees Value incurred defending the Abbot Litigation that remain

unpaid by Continental ($683,678.39), plus (2) interest at a rate

of nine percent ($149,781.76 as of the date of Value's latest

submission).  (Value Mem. at 9; Value Sur-Reply at 9.)  KBIC

argues that (1) Value is not entitled to damages because it was

fully compensated by its other insurer, Continental (KBIC Mem.

at 6-7); (2) the fees charged by Value's attorneys were

unreasonable (*id.* at 9-13); (3) KBIC is not liable for any fees

incurred by MedPlus, which was a co-defendant in the Abbot

Litigation and was represented by the same law firm that

represented Value (*id.* at 13-15); and (4) KBIC should not be

liable for prejudgment interest (*id.* at 15-16).

### I.  Value's Entitlement to Attorneys' Fees from KBIC

KBIC argues that Value "conceded that Continental has

provided it with a full and complete defense in the Abbott"

Litigation, and that any award of damages from KBIC would be a

"double recovery."  (KBIC Mem. at 7.)  Value counters that "the

pleadings and documents in this case reflect that Value has

never conceded that [Continental] provided it with a complete

9

defense in the Abbott Litigation," and that any such argument is waived because it "should have been raised long ago during summary judgment when liability remained undecided." (Value Mem. in Opp. at 3, 5.)

On August 23, 2018, Value, MedPlus, and Continental entered into a Memorandum of Understanding and settlement agreement to "resolve all disputes relating to all past bills issued to [Continental] for [its] obligations to [its] insureds in connection with the Abbott Litigation . . . through December 31, 2017." (Stern Decl., Ex. F, ¶ 2.) Under the settlement, Continental agreed to pay Stern & Schurin, who represented Value and MedPlus in the Abbott Litigation, a total of $545,000 "for past legal fees and disbursements incurred through December 31, 2017 on behalf of MedPlus and Value Wholesale." (*Id.* ¶ 3.) The agreement stated that it would "not discharge or impair any claims of Value Wholesale against its other insurers for non-payment of past and future defense costs incurred in connection with the Abbott Litigation." (*Id.* ¶ 8.)

Under New York law, where two insurers provide concurrent coverage, the insured is "allowed . . . to recover the whole amount from either insurer." *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 223 (N.Y. 2002) (citing *York-Buffalo Motor Express v. Nat'l Fire & Marine Ins. Co.*, 294 N.Y. 467, 473 (N.Y. 1945)). If the insured recovers an

amount from one insurer, and that insurer "pays more than its fair share for a loss covered by multiple insurers," "New York law recognizes a cause of action for pro rata contribution" from the co-insurers. *Nat'l Cas. Co. v. Vigilant Ins. Co.*, 466 F. Supp. 2d 533, 540 (S.D.N.Y. 2006) (citing *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 210 (2d Cir. 2000)).

KBIC is correct that Value cannot recover money from KBIC for fees that were already paid by Continental. Value's request, however, is for the fees above and beyond amounts it already received from Continental. For legal work performed through the fourth quarter of 2017, when the settlement with Continental was reached, Stern & Schurin had rendered eleven invoices in connection with the Abbott Litigation, totaling nearly $1.7 million in fees and costs. (Stern Decl., Ex. H; *see* Value Mem. at 7.) In Value's request for fees related to that time period, Value subtracted all amounts paid by Continental either as part of the August 2018 settlement or otherwise. (*See* Value Mem. at 5-7.) Thus, although Stern & Schurin charged nearly $1.7 million during that time period, Value's request for damages from KBIC for the same time period is for only $529,082.84.[3] (*Id.* at 7.)

---

[3] Value's total request also includes $154,595.55 in fees incurred for legal work beginning in the first quarter of 2018, a period not covered by the settlement with Continental.

As KBIC concedes, "each insurer's duty is separate and independent from the others." (KBIC Mem. at 6.) Under New York law, Value would be entitled to recover the full amount charged for defending the Abbott Litigation from either of its insurers that owed it a duty to defend. Therefore, if Continental had not made any payments, Value plausibly could have recovered the full amount charged by Stern & Schurin from KBIC. Thus, Value is entitled to recover from KBIC what it has requested: the outstanding amount of defense costs charged by Stern & Schurin that remain unpaid after payments made by Continental. Such an award does not constitute a double recovery, because these are fees charged in connection with defending the Abbott Litigation, which have not been paid, but which KBIC should have been paying from the outset. Accordingly, KBIC owes Value damages in the amount of reasonable fees and costs that were not already paid by Continental.

## II.  The Reasonableness of the Attorneys' Fees Incurred

KBIC next argues that the fees charged by Stern & Schurin during the course of the Abbott Litigation were unreasonable. (KBIC Mem. at 9-13.) KBIC argues both that the rates charged were too high, and that the amount of hours expended were too many. Though the substantive documents filed in the Abbott Litigation were filed under seal, KBIC points to several examples in Stern & Schurin's invoices of what it argues

12

were unreasonable amounts of work.  For example, KBIC cites an attorney spending 137.5 hours to "create a memorandum regarding pre-motion conference letters," and attorneys spending 187 total hours "on the Rule 56.1 statement."  (*Id.* at 10.)

To support its arguments regarding the purported unreasonableness of the attorneys' fees incurred by Value, KBIC relies on multiple cases involving the shifting of attorneys' fees in civil rights litigation to plaintiffs' counsel who likely worked on contingency.  (*See, e.g.*, KBIC Mem. at 9 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 484 F.3d 162 (2d Cir. 2007), which involved fee-shifting under the Voting Rights Act); and 13 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983), which involved fee-shifting under 42 U.S.C. § 1988).)  While those cases are instructive, they are not directly on point for the circumstance presented here.  The inquiry for a court when it must award fees to a plaintiff who has paid none pursuant to the fee-shifting provisions contained in certain civil rights statutes, such as the one before the Second Circuit in the *Arbor Hill* line of cases, is "what a reasonable, paying client would be willing to pay[.]"  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 192 (2d Cir. 2008).  The reason the court needs to engage in that inquiry, and attempt to ascertain what a reasonable client *would have* paid, is because

of the purpose of the civil rights fee-shifting statutes: to encourage quality lawyers to take civil rights cases from clients who may have meritorious claims, but cannot afford to pay an attorney. In those cases, "[a] plaintiff . . . has little incentive to negotiate a rate structure with his attorney prior to the litigation," and so the court must determine what it deems to be a reasonable fee, in light of a number of factors. *Id.*

Here, the court is not faced with a situation in which it must award fees, pursuant to a fee-shifting statute, to a plaintiff's lawyer who did not yet receive any fees. Rather, the question before this court is the amount of damages owed by KBIC as a result of its breach of its contractual duty to defend Value. In such a situation, the amount of damages is the "attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action." *United Parcel Serv.*, 983 F. Supp. 2d at 267–68. Though the fees must have been reasonably incurred, the reasonableness inquiry is slightly different than the one at issue in *Arbor Hill* and its progeny. "Where an insurer has breached its duty to defend, the insured's fees are presumed to be reasonable and the burden shifts to the insurer to establish that the fees are unreasonable." *Olin Corp. v. Ins. Co. of N. Am.*, 218 F. Supp. 3d 212, 228 (S.D.N.Y. 2016); *see also Diplomatic Man, Inc. v. Nike, Inc.*, No. 08-cv-

14

139, 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009) (where a "sophisticated business client[] has paid [its] bills, presumably after careful review by its general counsel or other senior business executives," that "is *prima facie* evidence of the reasonableness of the amount [of fees] as a whole").

The rates charged by Stern & Schurin in connection with the Abbott Litigation up until July 1, 2018 were $550 per hour for partners, and $325 for associates. (Stern Decl. ¶ 8.) After July 1, 2018, Stern & Schurin's rates increased slightly to $600 and $400 per hour, respectively. (*Id.* ¶ 10.)  Though these rates are slightly higher than the rates often awarded under fee-shifting statues, *see Small v. New York City Transit Auth.*, No. 03-cv-2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014) (recognizing up to $450 for partners and $300 for associates as the high end of hourly rates in the Eastern District "determined to be reasonable in *civil rights* cases") (emphasis added), they are not unreasonable rates for a paying client to incur in connection with a complex trademark infringement suit brought by a sophisticated medical device company.  Indeed, KBIC paid its own legal expert, a member at Frejka PLLC, $550 per hour to review the invoices submitted by Stern & Schurin and to submit an affidavit in support of KBIC's argument that the invoices were unreasonable. (ECF No. 84, Declaration of Elise S. Frejka ("Frejka Decl."), ¶ 5.)  If $550

was a reasonable hourly rate for KBIC to pay its attorney expert, it was also a reasonable rate for Value to pay to defend itself in litigation with even higher stakes.

Nor does the court find that the hours expended by the Stern & Schurin attorneys were unreasonable for the purpose of awarding damages. While KBIC paid its own attorney expert to spend numerous hours reviewing Stern & Schurin's invoices to locate what it contends are examples of "comically exorbitant" time spent by Stern & Schurin on the Abbott Litigation (KBIC Mem. at 9), the Supreme Court has directed that in determining the reasonableness of attorneys' fees, "trial courts need not, and indeed should not, become green-eyeshade accountants," *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*.

Here, KBIC has pointed to examples where a reasonable mind could find that the hours spent by Value's attorneys appeared excessive. In general, however, the total hours expended by Stern & Schurin on the Abbott Litigation appear to be reasonable given the context that it was a complex trademark dispute in federal court that remains pending five years after it was filed. And there was no reason that Value, a paying commercial client, would have tolerated repeated excessive

16

billing, given that KBIC was contesting its duty to defend, and had KBIC been successful, Value may well have ended up on the hook for all of the fees charged by Stern & Schurin.  As Judge Richard Posner has persuasively written, when there is "uncertainty about reimbursement, [an insured has] an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review." *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1075–76 (7th Cir. 2004).

Accordingly, the court finds that the amount of damages requested by Value are not unreasonable based on the rates charged or the hours billed by Stern & Schurin.

### III. Legal Fees for Work Defending Only MedPlus

Next, KBIC argues that that it should not be liable for fees incurred by MedPlus, and that the majority of the Stern & Schurin invoices submitted by Value were directed only to MedPlus, a co-defendant of Value's in the Abbott Litigation which Stern & Schurin also represented.  (KBIC Mem. at 13-15.) KBIC proposes that the court only award fees supported by time entries that explicitly state that the legal work was performed for Value, plus half of the fees supported by entries that were performed for both Value and MedPlus (other than time spent communicating with Continental), which KBIC contends is

17

$1,262,848.81. (KBIC Reply Mem. at 17–18.) Given KBIC's status as a co-insurer with Continental, KBIC argues that it is liable for only half that amount, $631,424.41, minus the money already paid by Continental (which is greater than that amount, leaving KBIC with purportedly no liability). (*Id.*) Value argues that it is not necessary to cut the fees in half merely because another co-defendant benefited from the same legal work, and that nothing in the bills alters KBIC's obligation to pay the total fees incurred by Value. (Value Sur-Reply at 5-6.)

In New York, "the law is clear that the party seeking to allocate expenses bears the burden of proving what amount of allocation is appropriate once the insured has made a *prima facie* showing that certain amounts were spent in its defense." *High Point Design, LLC v. LM Ins. Corp.*, No. 14-cv-7878, 2016 WL 426594, at *3 (S.D.N.Y. Feb. 3, 2016) (citing *Health-Chem Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 559 N.Y.S.2d 435 (N.Y. Sup. Ct. 1990)). "[T]he amount that should be allocated to the non-covered parties, and thus not recouped from the insurer, are any 'additional expenses' which would not have occurred but for the inclusion of the non-covered defendants." *Id.* at *4.

There is no doubt that KBIC had a duty to defend Value regardless of whether MedPlus was included as a defendant in the Abbott Litigation, and regardless of whether Value and MedPlus

retained the same law firm.  As KBIC acknowledges, much of the work performed by Stern & Schurin was "performed for MedPlus and Value."  (KBIC Reply Mem. at 17.)  If the work was performed in part for Value, it follows that the work would have still been performed, solely for the benefit of Value, even if MedPlus were not a defendant.  Under New York law, merely because another defendant benefitted from the work does not completely or partially absolve KBIC from its obligations.  *See High Point Design*, 2016 WL 426594, at *4 ("[T]here is no support in precedent or logic by which an insurer's obligation to defend its insured is steadily diminished as the insured's opponent in the underlying action adds parties to the insured's side of the caption.").

Given that MedPlus also benefited from the work for which KBIC is liable, KBIC may be entitled to seek contribution from MedPlus or its insurers.  *See U.S. Fire Ins. Co. v. Fed. Ins. Co.*, 858 F.2d 882, 885 (2d Cir. 1988) (recognizing a "well-settled equitable right to contribution" under New York law "where there is concurrent insurance" coverage).  But that is not the issue now before the court.  The issue now is the amount KBIC owes Value as a result of its duty to defend.  The correct result is that KBIC is liable for the work performed by Stern & Schurin that benefitted Value, or that benefitted Value and MedPlus jointly.  *See High Point Design*, 2016 WL 426594, at *4

(When an insurer breaches its duty to defend, it is "required
. . . to pay [the insured]'s defense costs – nothing more, and
nothing less.").

The same is not necessarily true with regard to
instances where legal work performed by Stern & Schurin
benefitted *only* MedPlus, because such work did not occur as a
result of Value being sued in the Abbott Litigation.  KBIC's
expert identified certain time entries from Stern & Schurin's
invoices that related solely to work on behalf of MedPlus,
totaling $335,877.50 in fees, and entries relating solely to
Stern & Schurin's communications with Continental, totaling
$14,800 in fees.  (Frejka Decl., ¶¶ 21-25.)

The former category, work performed solely for the
benefit of MedPlus (which included a motion for summary judgment
filed solely on behalf of MedPlus), constitutes "additional
expenses" that KBIC is not liable for as a result of its breach
of its duty to defend Value.  Value initially argued that KBIC
had failed to "provide any analysis which allocates the defense
costs attributable solely to MedPlus . . . ."  (Value Reply Mem.
at 11.)  After KBIC submitted an expert report identifying
certain of the time entries as being related only to work on
behalf of MedPlus, Value did not offer alternative
categorizations, and conceded that KBIC is entitled to deduct
the time expended only on behalf of MedPlus.  (Value Sur-Reply

at 5.)[4]  Accordingly, KBIC has met its burden to show that it is not liable for the $335,877.50 billed by Stern & Schurin for work benefitting only MedPlus, and the court will deduct that amount from Value's request for damages.

The time spent by Stern & Schurin communicating with Continental presents a closer call.  KBIC argues, without much elaboration, that "[i]t would be inappropriate to allocate those cost[s] to KBIC."  (KBIC Reply Mem. at 17 n.21.)  Value avers, also without much focus on the Continental-specific time, that "it is clearly improper for KBIC to deduct anything other than 'MedPlus Specific Time.'"  (Value Sur-Reply at 5.)

The court finds that KBIC is liable for time that Stern & Schurin spent communicating with Value's other insurer, Continental.  The time entries reflect that this time consisted of lawyers providing routine information and updates on the Abbott Litigation to Continental.  (*See, e.g.*, Frejka Decl., Ex. C, at 1 ("Email to Pam Ellingson at [Continental] with Abbott settlement demand to Value Wholesale").)  The fact that this work stemmed directly as a result of the Abbott Litigation, and was included on the invoices provided to the client, weighs in

_____

[4] Value's expert argues that KBIC's analysis is flawed because work "that generally benefitted MedPlus would benefit Value."  (ECF No. 86, Sur-Reply Expert Report of Steven A. Tasher, at 18.)  However, Mr. Tasher offers only one example of a time entry categorized as MedPlus-specific that would have also benefitted Value, and he did not undertake his own analysis to weed out the MedPlus-specific entries.

favor of holding KBIC liable for it.  As one of the insurers
owing Value a duty to defend, it was reasonable for Continental
to want to be kept informed about the progress of the
litigation.  The need for the work only existed because Value
had been sued by Abbott, and so the resulting legal costs are
considered "defense costs."  KBIC has not met its burden to show
that these costs should be allocated elsewhere.  KBIC also had a
duty to defend Value, and KBIC's self-imposed absence from the
status calls should not redound to its benefit.

Accordingly, KBIC is liable for the full amount of
fees requested by Value (which did not include fees already paid
by Continental), minus fees charged solely in connection with
defending MedPlus.  The full amount requested by Value is
$683,678.39.  (Value Mem. at 9; Value Sur-Reply at 9.)
Subtracting the $335,877.50 that was billed by Stern & Schurin
for work that benefitted only MedPlus results in a damages award
of $347,800.89.

## IV.  Prejudgment and Postjudgment Interest

Value requests prejudgment interest of nine percent,
compounded annually, on the outstanding amount of fees owed by
KBIC, calculated based on the specific amount that remains due
on each of Stern & Schurin's invoices.  (Value Sur-Reply at 8-
9.)  KBIC counters that no interest should be awarded because
interest was not authorized by the retainer agreement between

Stern & Schurin and Value.  (KBIC Reply Mem. at 18.)  KBIC also argues that even if Value is entitled to interest, it is impossible for the court to determine how and when Stern & Schurin's invoices were partially paid, and thus impossible to calculate the amount of interested based on Value's proposed approach.  (*Id.* at 19.)

Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract," and the "interest and the rate and date from which it shall be computed shall be in the court's discretion."  N.Y. C.P.L.R. § 5001(a).  "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  *Id.* § 5001(b).  "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  *Id.* "Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."  *Id.* § 5004.

The direction in the New York Civil Practice Law and Rules that prejudgment interest "shall be recovered" means that such interest is mandatory when a defendant is found to have breached a contract under New York law.  *See, e.g.*, *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599,

606 (2d Cir. 2003) ("Under New York law, 'prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract.'") (quoting *Graham v. James*, 144 F.3d 229, 239 (2d Cir.1998)).  In arguing that interest should not be awarded because interest was not contemplated in the retainer agreement between Stern & Schurin and Value (*see* KBIC Reply Mem. at 18), KBIC relies on cases that declined to award prejudgment interest under *federal* law, *see Hop Hing Produces Inc. v. Lin Zhang Trading Co.*, No. 11-cv-03259, 2013 WL 3990761, at *6 (E.D.N.Y. Aug. 5, 2013) (declining to award prejudgment interest under the Perishable Agricultural Commodities Act); *Poppy's Wholesale Produce Inc. v. S & S Grocery of N.Y. Corp.*, No. 11-cv-4337, 2012 WL 2373629, at *1 (E.D.N.Y. June 22, 2012) (same). For a breach of contract claim under New York law, the rule that prejudgment interest is mandatory plainly applies.

The payments that were already made to Stern & Schurin were apparently applied to the outstanding invoices on a pro-rata basis, and Value has calculated the total amount of interest due by applying the nine percent rate to each individual invoice (based on the amount of money still outstanding and the number of days it has been outstanding). (*See* Value Sur-Reply at 8.)  KBIC argues that in the event interest is owed, Value's method of calculating interest is

24

improper because there is no evidence showing how the pro-rata payments were applied.

The court agrees with KBIC that the most transparent approach is to calculate interest from the midpoint of the due dates of the oldest and most recent outstanding invoices. Where, as here, the interest stems from numerous unpaid obligations over a period of time, the court may calculate interest "from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); *see Oy Saimaa Lines Logistics Ltd. v. Mozaica-New York, Inc.*, 193 F.R.D. 87, 91 (E.D.N.Y. 2000) (recommending "that the interest at the statutory rate of nine percent per year should be calculated as of . . . the midpoint between" when the "the outstanding invoices were due").

The invoices do not list payment due dates, but for purposes of calculating interest, the court will assume that payments were due 30 days after the date of each invoice (which was generally when the next invoice was issued).  The oldest outstanding invoice is dated July 29, 2016 (Stern Decl., Ex. H, at -10267), and so the court assumes the oldest outstanding payment was due 30 days later, on August 28, 2016.  The most recent outstanding invoice before the court is dated October 11, 2019 (*id.*, Ex. G, at -10304), which the court assumes was due 30 days later, on November 10, 2019.  The midpoint between August 28, 2016 and November 10, 2019 is April 4, 2018.

Accordingly, the court will award Value prejudgment interest at a rate of nine percent per annum on the total damages award, calculated from April 4, 2018, until the date of entry of judgment.  As Value requests (*see* Value Mem. at 11), the court will allow Value to submit a proposed calculation of prejudgment interest before judgment is entered.  Finally, postjudgment interest shall be awarded as provided by 28 U.S.C. 1961.  *See* 28 U.S.C. 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

## Conclusion

For the foregoing reasons, KBIC owes Value $347,800.89 in damages, and prejudgment interest at a rate of nine percent per annum since April 4, 2018, as a result of its breach of the duty to defend Value.  Within seven days of this Memorandum and Order, Value shall submit its proposed calculation of prejudgment interest, and the parties shall file a joint letter setting forth whether any outstanding issues remain in this case, and if so, how they intend to proceed, or whether judgment should be entered and the case can be closed.

**SO ORDERED.**

Dated:     November 2, 2020
           Brooklyn, New York

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge